AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

United States of America
v.
XAVIER LADERRICK WALLACE

Case No. 24-mj-6012-PAB

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 2017 - January 2024__ in the county of __Miami-Dade and Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A(2)(B) | Cyber Harrasment |

This criminal complaint is based on these facts:
PLEASE SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Adam N. Pascoe, Special Agent, FBI
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 01/11/2024

_____
*Judge's signature*

City and state: Fort Lauderdale, Florida

Panayotta Augustin-Birch, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Adam N. Pascoe, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ"), currently assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division. My duties involve the investigation of a variety of violations of federal criminal law, including bank robberies, Hobbs Act robberies, and cases involving interstate threatening communications. I have been an FBI SA since 2019. Prior to my employment with the FBI, I worked as a Police Officer in Norfolk, VA, from 2012 to 2019, where I responded to and investigated a variety of violent crimes in violation of Virginia law.

2. This affidavit is submitted in support of an application for a criminal complaint charging XAVIER LADERRICK WALLACE ("WALLACE") with Cyber Harassment, in violation of 18 U.S.C. § 2261A(2)(B), between June 2017 and January 2024, in the Southern District of Florida and elsewhere.

3. The statements contained in this affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials and civilians in this investigation. I have not included in this affidavit each and every fact known to me. Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint against WALLACE for the above-described criminal violation.

## STATUTORY BACKGROUND

4.     Under 18 U.S.C. § 2261A(2)(B), "[w]hoever . . . with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person . . . shall be punished as provided [by statute]."

## PROBABLE CAUSE

5.     WALLACE came from a dysfunctional home, and his relative, VICTIM #1, and her husband, VICTIM #2, often assisted WALLACE with his basic needs while he was growing up in Miami, FL. In high school, WALLACE was a talented dancer, so he was offered a scholarship to attend the American Musical and Dramatic Academy (AMDA) in Los Angeles, CA. However, the scholarship did not fully cover the school's expenses, and WALLACE was still in need of approximately $10,000. Therefore, VICTIM #2 co-signed a $10,000 loan to provide WALLACE with his first year of funding. VICTIM #2 informed WALLACE that the loan was a one-time deal, and no additional loans and/or money would be provided to him for school. VICTIM #1 then flew with WALLACE to Los Angeles in February 2016 to assist him with getting ready for school.

6.     After approximately one year of being at AMDA, WALLACE ran out of funding. He requested more money from VICTIM #2, but VICTIM #2 reminded him that the $10,000 was a one-time deal. VICTIM #2 made WALLACE several offers to fly him back to Miami from Los Angeles, but WALLACE refused to return to South Florida. Instead, starting in approximately June 2017, WALLACE began sending repeated abusive, threatening, and harassing text messages and voicemails to VICTIM #1's personal cellular telephone. Additionally, starting in approximately July 2018, WALLACE began sending repeated abusive, threatening, and harassing e-mails to VICTIM #2 at his work e-mail address.[1]

7.     At all times relevant to the material facts outlined in this affidavit, VICTIM #1 and VICTIM #2 resided and worked in the Southern District of Florida, where the harassing electronic communications were received. Further, at all times relevant to the material facts outlined in this affidavit, WALLACE resided in California, from where the harassing electronic communications were sent.

8.     On October 10, 2018, in an effort to stop WALLACE's interstate electronic harassment of VICTIM #1 and VICTIM #2, FBI SA's from the Los Angeles Field Office made contact with WALLACE at his Los Angeles residence, where he was interviewed and admonished. During the interview, WALLACE admitted to sending harassing messages to VICTIM #1 and VICTIM #2, and he said that he would stop doing so. However, shortly after the interview, WALLACE continued

---

[1] VICTIM #2 is an employee of the United States government, and all relevant e-mails were sent to VICTIM #2's official United States government e-mail address.

sending abusive, threatening, and harassing electronic communications to VICTIM #1 and VICTIM #2.

9. In late-2019, as the electronic harassment from WALLACE continued, VICTIM #1 and VICTIM #2 both filed petitions for injunction for protection against stalking under Fla. Stat. § 784.0485 in the Circuit Court of the Seventeenth Judicial Circuit in Broward County, FL. Court records show that on December 3, 2019, *Final Judgments of Injunction for Protection Against Stalking (After Notice)* were signed and issued by Circuit Judge Michael Kaplan in favor of VICTIM #1 and VICTIM #2, prohibiting WALLACE from, *inter alia*, making any direct or indirect contact with either VICTIM #1 or VICTIM #2 by text message, e-mail, or phone call. By its terms, the injunction was to be in full force and effect for one year from its issuance, through December 3, 2020.

10. Nevertheless, WALLACE continued sending abusive, threatening, and harassing electronic communications to VICTIM #1 and VICTIM #2, even mocking the issuance of the injunctions against him. For instance, on March 1, 2020, WALLACE sent an e-mail to VICTIM #2 in which he stated, *"a temporary restraining order is the best you could do?"* Additionally, on May 16, 2020, WALLACE sent a text message to VICTIM #1 in which he stated, *"FUCK YOU AND THAT RESTRAINING ORDER."*

11. In total, between June 2017 and November 2020, WALLACE sent more than 400 harassing text messages to VICTIM #1. Examples of such text messages are as follows:

| DATE | CONTENT |
|---|---|
| June 26, 2017 | I will whoop your motherfucking ass |
| September 3, 2017 | Keep ignoring me and see what happens to your kids |
| February 11, 2018 | I want to slit your motherfucking throat and watch you choke on your own blood you raggedy ass piece of shit. Fuck wrong with you bitch. |
| August 27, 2018 | See it's all fun and games until I blow one of you silly motherfuckers up. Pathetic motherfucker |
| October 4, 2018 | Fake ass support system. I'll kill you better believe that. |
| October 9, 2018 | Ooh baby I'll see you soon darling trust that. I'm gone fuck one of you hoes up on my grandma bitch wait on it. |
| December 5, 2018 | We gone see what drive is when I'm done busting you up side your motherfucking head. |
| December 5, 2018 | Fake ass hoe I'll blow your brains out bitch. |
| May 13, 2019 | Don't worry you old ass ugly ass creole looking bitch I'll be in Miami soon . . . |
| May 13, 2020 | FUCK YOU<br>[identical message sent in eleven consecutive messages] |
| May 13, 2020 | AWW YOU THOUGHT I NEEDED YOU BITCH THAT'S WHAT IT WAS YOU FUCKING SICK PYSCHO BITCH<br>. . . YOU'LL HAVE A SLOW PAINFUL DEATH TRUST ME ;-) |
| May 16, 2020 | ILL KILL YOU HOE FUCK YOU AND THAT RESTRAINING ORDER BITCH LIKE I SAID YOU PIECE OF SHIT THAT WAS YOUR BEST BET YOU DELUSIONAL MOTHERFUCKER . . . |

12. Text messages sent from WALLACE to VICTIM #1 have been sent from seemingly random originating phone numbers that are linked to companies like "TextNow" or "Pinger," which are software applications that provide users with free anonymized phone numbers that can be used temporarily to make phone calls or text

messages, and then discarded by the user. Such software applications can be downloaded to a user's phone, tablet, or other internet-connected electronic device, which then allows users to choose from hundreds of phone numbers from a variety of area codes that have been leased by the companies.

13. While these phone numbers are typically not directly attributable to an end-user through subscriber information maintained by the software application companies, WALLACE can be identified as the sender of the messages from these "burner" numbers based on a variety of factors, including: (1) WALLACE explicitly identifies himself by name in some of the messages; (2) WALLACE has sent photographs of himself and items belonging to him in some of the messages; (3) the content of the messages are unique to the familial relationship between WALLACE and VICTIM #1; (4) WALLACE admitted to sending these types of messages in his interview with Los Angeles FBI agents on October 10, 2018; and (5) WALLACE has acknowledged the restraining order that VICTIM #1 obtained in the messages. In many cases, multiple messages are sent on a single day from the same originating phone number by WALLACE to VICTIM #1, before that number is discarded by WALLACE and never used again.

14. In total, between July 12, 2018, and November 2020, WALLACE sent more than 70 harassing e-mails to VICTIM #2 at his official United States government e-mail address. Examples of such e-mails are as follows:

| DATE | CONTENT |
|---|---|
| December 5, 2018 | I'll whoop your ugly faggot ass bitch [REDACTED] is a queen too with his bitch made ass that's why [REDACTED] been taking care of his sorry ass this long. |
| September 21, 2019 | I'll snap your motherfucking neck in half you old ass senior citizen, Chile while you angry you need to be trying not to pop a vessel you know you'll be out of here any minute |
| March 1, 2020 | I'm too grown for you weak bitches that's what it really is ugly motherfucker with your trifling ass you bottom bitch!! Your fake ass top [REDACTED] but a temporary restraining order is the best you could do? Nigga please!! |
| March 29, 2020 | Instead of facing me you losers got a temporary restraining order lol how "adult" of you |
| April 28, 2020 | Nann nigga take care of me you jealous ass old ass fuck nigga!! I don't need you to be daddy you fucking hypocrite. I will beat your ass bitch |

15.   E-mails sent by WALLACE to VICTIM #2 have been sent from WALLACE's personal e-mail address, wearethefuture.******@gmail.com. Records obtained from Google show that this e-mail address has been subscribed to "Xavier Wallace" since October 2016.

16.   On September 2, 2021, FBI agents *again* interviewed WALLACE at his residence in Los Angeles, CA. During the interview, agents presented WALLACE with screenshots of some of the harassing text messages and e-mails sent to VICTIM #1 and VICTIM #2. WALLACE admitted to sending the text messages to VICTIM #1 from multiple "TextNow" phone numbers he used, and he further admitted to sending the e-mails to VICTIM #2 from his e-mail address. Following the interview, WALLACE was served with *extensions* of the previously described injunctions in favor

of VICTIM #1 and VICTIM #2 in effect until further order of the court which had been signed by Circuit Judge Michael Kaplan on April 29, 2021.

17. On October 26, 2021, less than two months after being admonished a second time by the FBI *and* served with extensions of injunctions, VICTIM #2 again received multiple unsolicited text messages from WALLACE in violation of the explicit terms of the injunction issued in favor of VICTIM #2. Similarly, between November and December 2021, VICTIM #1 received more than 100 harassing e-mails from WALLACE in violation of the terms of the injunction issued in favor of VICTIM #1.

18. Despite best efforts to dissuade WALLACE from continuing his course of conduct, his harassment campaign against VICTIM #1 and VICTIM #2 has continued to present day. During 2022, VICTIM #1 received more than 1,000 harassing e-mails from WALLACE. Additionally, WALLACE has left several voicemail messages on VICTIM #1 and VICTIM #2's home landline telephone, including one in which WALLACE stated, among other things, the following: "*I wish I had a motherfucking gun right now on me so I could blow your motherfucking head off.*" In summary, since the start of 2023, VICTIM #1 has received more than 1,000 harassing e-mails from WALLACE, and VICTIM #2 has continued to receive harassing text messages on a regular basis. Given the totality of the threats and harassments discussed in this affidavit, WALLACE has caused substantial emotional distress to VICTIM #1 and VICTIM #2.

## CONCLUSION

19. Based upon the foregoing, I respectfully submit that probable cause exists to charge XAVIER LADERRICK WALLACE with Cyber Harassment, in violation of 18 U.S.C. § 2261A(2)(B).

_____
Adam N. Pascoe
Special Agent
Federal Bureau of Investigation

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this 11th day of January, 2024.

_____
Panayotta Augustin-Birch
United States Magistrate Judge